IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GINA GAMBRELL, as the Administratrix of the Estate of Mark Wayne Gambrell,**<br><br>Plaintiff,<br><br>v.<br><br>**WILKINSON CGR CAHABA LAKES, LLC, et al.,**<br><br>Defendants. | 2:13-cv-02146-HGD |

## MEMORANDUM OPINION

This case centers on Plaintiff's allegations that Defendants' negligent and/or wanton conduct wrongfully caused Mark Gambrell's death in a fire at his apartment on July 7, 2013. This matter is before the court on the magistrate judge's Report and Recommendation (doc. 137), recommending that the Wilkinson Defendants' Motion for Summary Judgment (doc. 77) be granted in part and denied in part.

The parties fully briefed the summary judgment motion. *See* (Docs. 92, 127). On August 17, 2016, the magistrate judge entered his report and recommendation and the parties were allowed 14 days to file objections to the recommendations made by the magistrate judge. *See* (Doc. 137).

On August 31, 2016, Plaintiff and Defendants filed objections to the magistrate judge's report and recommendation. (Docs. 139, 141). Plaintiff also filed a Motion for Oral Argument. (Doc. 140). Plaintiff then filed a response to Defendants' objections (doc. 142) and a Motion to

1

Strike portions of Defendants' objections. (Doc. 143). Defendants also filed a response to Plaintiff's objections (doc. 144), a reply to Plaintiff's response to its objections (doc. 145), and a response to Plaintiff's Motion to Strike. (Doc. 146).

The court has carefully reviewed and considered *de novo* all relevant materials. For the reasons stated in this Memorandum Opinion, the court **ADOPTS IN PART and REJECTS IN PART** the magistrate judge's report. The court **ACCEPTS** his recommendation to dismiss Wilkinson Companies as a defendant; his recommendation to grant summary judgment in favor of and dismiss as a defendant Wilkinson Group; his recommendation to grant Defendants' Motion for Summary Judgment as to part of Count I and all of Count II and to dismiss those claims with prejudice; his recommendation that the court deny Defendants' Motion for Summary Judgment as to the remaining theory of Count I, Count VI, and the defense of contributory negligence; and his recommendation that the court decline to find that Defendants spoliated the smoke detector in bad faith so as to entitle Plaintiff to an adverse inference. The court makes additional factual findings and conclusions of law as follows.

I.  **Factual Background**

Mr. Gambrell died in a fire at his apartment at the Lakes at Inverness apartment complex on July 7, 2013. His wife brings this lawsuit as the administratrix of his estate and contends that Mr. Gambrell's death was caused by Defendants' failure to ensure a properly working smoke detector and safe kitchen design.

The court declines to find that, on the evening of the fire, Mrs. Gambrell spoke to her mother for "over two hours." (Doc. 136 at 9). The record shows only that she spoke to her mother for "a long time." (Doc. 77-10 at 2). In addition to adopting the magistrate judge's

findings of fact in the "Procedural and Factual Background" section of his opinion, the court finds the following additional facts.

### A.     Kitchen Design

The Shelby County Department of Development/Inspection Services records pertaining to the Lakes at Inverness apartment complex do not indicate any concerns have ever been raised regarding kitchen design in the complex. (Doc. 77-18 at 122). The Shelby County Inspection Services Supervisor at the relevant time was unaware of any of the inspectors in his office having concerns about the kitchen designs at the property. (Doc. 77-18 at 64-65, 122). After the July 2013 fire, Inspection Services permitted, inspected, and approved the exact same kitchen layout, and Defendants rebuilt the Gambrells' apartment using the pre-fire kitchen design. (Doc. 77-16 at 27-28; Doc. 77-20). As part of the permitting process when a kitchen is gutted and rebuilt, Inspection Services evaluates kitchen design compliance with applicable codes. (Doc. 77-18 at 136-37).

Some 92 of the 801 units at the property contained kitchens with the same design as the Gambrells'. (Doc. 77-16 at 33, 37, 39). Defendants did not maintain records related to or a copy of the instruction manual for the stove in the Gambrells' apartment. (Doc. 77-19 at 63). Another grease fire in an apartment at the Lakes at Inverness complex occurred in a kitchen with the same design in July 2014. (Doc. 77-19 at 89-90). Defendants' expert Jamie McCallister opined that the vertical cabinet next to the range increased the fuel load, heat release rate, and energy of the fire and could have increased the fire's spread. (Doc. 91-1 at 191-93).

Steve Coggins, Regional Maintenance Supervisor and later Regional Manager for the apartment complex, testified that he and several of Defendants' officers and/or employees

inspected the apartment complex prior to purchase in 2011. (Doc. 77-16 at 14-15, 17). Mr. Coggins did not recall seeing any cabinet damage during Defendants' pre-purchase inspection of the property. (Doc. 77-16 at 47). He stated that if he had seen any cabinets with damage, he would have noted that fact. (*Id.*) Mr. Coggins testified that he had never discussed the distance of the cabinet to the stove with Defendants or anyone else. (*Id.* at 43, 48).

A picture of an exemplar Lakes at Inverness apartment kitchen with a design identical to the Gambrells', which Plaintiff alleges shows cabinet charring from the adjacent stove, was taken on July 15, 2013. (Doc. 95 at 11). Plaintiff's expert David Smith opined that the scorch marks next to the stove in the exemplar picture indicate the stove was improperly installed, which poses a fire safety hazard. (Doc. 95 at 15). Mr. Coggins testified that if a cabinet had markings like those in the picture, it would be cleaned, repaired, painted, or otherwise altered before a new resident came into the apartment. (Doc. 77-16 at 40-43).

The pre-purchase Enercon report indicates no dangerous condition or signs of charring in any of the complex's kitchens. (Docs. 128-3 through 128-7). The report contains a picture of a kitchen that appears to be designed identically to the Gambrells'; that picture shows that the wood cabinet adjacent to the stove may have markings on it that seemingly correspond to the burners on the range, but the report does not note these markings. (Doc. 128-5 at 2). Mr. Coggins testified that he did not remember seeing this picture in evaluating the Enercon report but that it appeared to show scorching on the wall next to the burners. (Doc. 77-16 at 44; Doc. 77-19 at 106). The Enercon report noted that "[t]he observed cabinets and counters are estimated to be original from the time of construction with most appearing in average to fair condition" and that "[a] few kitchen base cabinets and counters are in poor condition and likely will require

4

replacement during the term. Some cabinet doors, drawers, and hardware will likely need replacing and repairs; however, minor work such as this could be addressed as a maintenance issue." (Doc. 128-4 at 54).

Defendants' preventive maintenance protocol did not include inspections for latent defects or inspections of the stove or cabinets. (Doc. 77-9 at 3 ¶¶ 7, 9; Doc. 77-9 at 5; Doc. 77-19 at 97).

## B.     Loss of the Smoke Detector

The day after the fire, two Wilkinson employees, Jan Norred and Mr. Coggins, walked through the Gambrells' apartment with the Fire Marshall, Sam Johnson. (Doc. 77-16 at 79; Doc. 94-1 at 115). Both Ms. Norred and Mr. Coggins testified that they saw the smoke detector in the apartment. (Doc. 77-16 at 78-79; Doc. 94-1 at 116). Mr. Coggins testified that he was aware that the smoke detector "could be incredibly important" and that he was aware "that there are abilities of people to test that equipment, to confirm why it did or did not work[.]" (Doc. 77-16 at 79-80). He affirmed that he did not know what had happened to the smoke detector after he saw it in the burned apartment. (*Id.* at 78). Ms. Norred testified that on the day after the fire, she knew the smoke detector to be a "critical component" in investigating the fire and that she did not have any knowledge of how the smoke detector was lost. (Doc. 94-1 at 115-116, 118).

Ms. Norred was charged by Wilkinson with guarding the apartment after the fire and making sure that when Mr. Coggins was not on site, "no one was in and out of the Gambrell's [sic] apartment." (Doc. 94-1 at 114, 143-44). She testified that the apartment itself, the appliance, and the smoke detector were Wilkinson's property and that Wilkinson undertook a duty to protect those things after the fire. (*Id.* at 117-118).

After the fire department released the apartment to the Defendants on the day after the fire, Defendants secured the apartment by locking it, fencing it, and placing barriers around it; the windows had been boarded up after the fire. (*Id.* at 115, 144, 191). Ms. Norred testified that a day or two after Defendants secured the apartment, "[t]he insurance company came in and took everything that they needed out of the unit, wrapped it all up in cellophane, put everything in one nice little package, and . . . took everything that they needed out." (*Id.* at 117). To Ms. Norred's knowledge, no one entered the apartment during that one- to two-day window, and the apartment showed no signs of forced entry. (*Id.* at 191–192). The smoke detector never made it to a storage facility with other items the insurance company removed from the apartment. (*Id.* at 118).

## II.     Plaintiff's Motion to Strike Portions of Defendants' Objections

The court **GRANTS** Plaintiff's Motion to Strike or Disregard Certain Evidence and Arguments Presented in Support of Wilkinson Defendants' Objection to Magistrate Judge's Report and Recommendation. (Doc. 143). Defendants' objections contain additional statements of facts and evidence that were not originally submitted in support of their Motion for Summary Judgment or Reply, as well as new arguments related to that evidence. For example, they present Lindsey Carter's affidavit (doc. 141-3) and excerpts from the 2009 International Building Code (doc. 141-6) and the 2009 International Fire Code. (Doc. 141-5) to support their objection that the magistrate judge improperly denied summary judgment to Defendants as to the smoke detector installation claims in Counts I and II. Defendants also object, for the first time on review, that David Smith's conclusion regarding the requirements of the applicable building code should be excluded as based on inadmissable hearsay.

"While Fed.R.Civ.P. 72 permits the district court to consider arguments and evidence not

submitted to the Magistrate Judge, absent an explanation or justification as to why such arguments or evidence were not previously submitted, the district courts typically decline to consider them upon de novo review of a report and recommendation." *Mallard v. Roberts*, No. Civ.A. 1:05-CV-2(WLS), 2006 WL 1431570, at *1 (M.D. Ga. May 19, 2006) (citing *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998)). Doing otherwise "would invite future litigants to adopt a 'wait and see' approach with respect to the magistrate judge's decision and then, with the benefit of the magistrate judge's opinion, offer a new set of arguments for the district judge to consider." *Id.* (quoting *Sharp v. Gen. Motors Acceptance Corp.*, 2005 WL 3455850, at *3 (N.D. Ga. 2005)).

Defendants do not attempt to explain why they failed to submit this new evidence during summary judgment briefing or submit that they lacked access to it during briefing. Defendants' objections center prominently on establishing that the applicable building code(s) did not require a hard-wired smoke detector, which goes to the heart of the factual dispute on which the magistrate judge based his decision to deny summary judgment as to Mrs. Gambrell's claim of negligent or wanton smoke detector installation. These portions of the objections epitomize the kind of "wait and see" approach this court cannot reward. Thus, the court grant's Plaintiff's Motion and strikes the Defendants' objections and evidence in support to the extent that they constitute new evidence or argumentation.

**III.    Report and Recommendation Section III. Counts I and II—Negligence/Wantonness**

**A. and B.    Counts I and II: Duties to Install & Maintain Smoke Detector**

The court clarifies that Defendants argue that they are entitled to summary judgment under Count I, which pleads negligent or wanton breach of an **assumed** duty to install and

maintain a smoke detector, because they did not owe a general duty to ensure a working smoke detector and did not breach their assumed duty to maintain the smoke detector in accordance with the terms of the lease; neither did they breach their duty not to conceal latent defects related to the smoke detector. Defendants argue that they are entitled to summary judgment as to Count II, to the extent it states that Alabama law **imposes** a duty to maintain a working smoke detector, because Alabama law does not impose a general tort-based duty on landlords to maintain smoke detectors and because they did not breach a duty to disclose a latently defective smoke detector.

Though the court concurs that Alabama law does not independently impose a tort-based duty on landlords to maintain a working smoke detector, it finds that the magistrate judge's analysis of this point does not apply to Count I, which pleads only a violation of an **assumed** duty. Rather, it establishes that Defendants are entitled to summary judgment under Count II, to the extent that count claims that Defendants violated their duty under Alabama law to maintain a working smoke detector.

The court **SUSTAINS** Plaintiff's and Defendants' objections that the magistrate judge did not address Plaintiff's Count II insofar as it contained a claim related to the smoke detector, but only to the extent that Plaintiff alleges that Defendants knew or should have known the smoke detector in the Gambrells' apartment did not work but did not disclose that fact to the Gambrells. As the magistrate judge noted, a landlord is liable "for injuries resulting from latent defects known to the lessor at the time of the leasing and which the lessor concealed from the tenant." *Casey v. Estes*, 657 So. 2d 845, 848 (Ala. 1995).

Assuming that the smoke detector was defective, no evidence establishes that Defendants knew or should have known that the smoke detector in the Gambrells' apartment did not work.

Rather, the evidence is undisputed that the smoke detector was determined to be functional during a preventative maintenance check in May 2013, and that the Gambrells did not report any smoke detector issues to Defendants after February 28, 2012. Therefore, Defendants did not breach any duty to notify Plaintiff of a latently defective smoke detector.

Accordingly, although the court sustains the objections to the magistrate judge's failure to address Count II's smoke detector claim, its resolution of that claim does not affect the court's ultimate decision to adopt the magistrate judge's recommendation as to Count II.

### C.      Count II: Failure to Remedy Faulty Kitchen Design

The magistrate judge correctly analyzed Plaintiff's Count II claim as to the kitchen design under the latent defect theory. As the magistrate judge noted, the AULTA does not create a cause of action in tort and an applicable building code does not itself create a duty in tort but rather may be presented as evidence of the standard of care. So the only duty theory Plaintiff may advance is that the installation of the stove out of compliance with the manufacturer's specifications amounted to a latent defect of which the Defendants were aware and concealed from Plaintiff.

Latent defects are those "defects that are hidden or concealed, or which can not be discovered by a reasonable inspection." *Casey*, 657 So. 2d at 848 (internal citations omitted). While the magistrate judge focused on Defendants' knowledge of whether the kitchen design was defective and found that they lacked notice of the defective design, this court additionally examines whether the defect in the kitchen design was *latent* at all.

In *Casey*, the Alabama Supreme Court held that an open gas line from the gas tank to the bathroom was not a latent defect, because "[t]he undisputed evidence show[ed] that the gas line

was highly visible on the outside of the house at the tank, as well as on the inside of the house in the bathroom." 657 So. 2d at 848. The plaintiffs knew that one gas line inside the house, previously connected to a gas dryer, was disconnected and they had installed an electric dryer in the gas dryer's place. *Id.* "[[The landlord] made no representation as to the condition of the gas lines, or their safety, and there is no evidence that he knowingly concealed the disengaged gas line from the [tenants]." *Id.* Similarly, in another case, a insufficiently wide step constituted a *patent*, rather than *latent*, defect. *Uhlig v. Moore*, 93 So.2d 490, 493 (Ala. 1957).

By contrast, a stove unsupported by legs or other bracings, where other stoves similarly installed had collapsed in other apartments in the same complex—thus putting the landlord on notice of the hazard—constituted a latent defect the landlord could be found to have concealed from the tenant. *Taylor v. Leedy & Co., Inc.*, 412 So. 2d 763, 764 (Ala. 1982).

The court finds that if the defect is characterized as the fire hazard posed by installing the stove adjacent to a vertical wood cabinet, then it was not latent. Like the gas line and a step too narrow to walk safely on, the lack of a 15-inch gap between the stove and the vertical cabinet next to it—and any scorch marks on the Plaintiff's cabinet—was plainly not concealed. Defendants did not attempt to hide the lack of a 15-inch clearance from the Gambrells and did not make any representations as to the safety of the cabinet in relation to a hot range. Mr. Coggins's speculation that, *if* any cabinets had markings like those in the picture of the exemplar kitchen, Defendants would somehow alter or cover up the markings, does not establish that Defendants concealed any such marks in any apartments at all, much less **Plaintiff's** apartment.

In the alternative, however, if the defect is characterized as the hazard posed by the stove being installed out of compliance with the manufacturer's instructions, a defect of which the

Plaintiff could not be aware (and therefore latent), the court concurs with the magistrate judge's assessment that the Defendants did not have actual or constructive knowledge of the defect. Viewing the facts in the light most favorable to the Plaintiff, the court cannot find any evidence that shows that Defendants were on notice of the defect at any relevant time (at the time of purchase and/or at the time(s) that the Gambrells signed a lease with Wilkinson Cahaba).

Wilkinson Cahaba purchased the property *after* the stove was installed and no evidence suggests that Defendants ever had access to the manufacturer's instructions. Inspection Services did not have records of any issues with kitchen designs at the complex, and so did not inform Defendants that they were out of compliance with any applicable code provisions related to the kitchen design. Indeed, the record does not show that the kitchen was constructed out of compliance with any applicable codes, and the identically rebuilt kitchen was inspected, approved, and permitted in compliance with all currently applicable codes. Defendants' preventive maintenance protocol did not include inspections for latent defects or inspections of the stove or cabinets.

The record does not show that Defendants ever discussed the placement of the cabinet next to the range as posing a safety issue. The Enercon report did not mention any potential problems related to the kitchen design, specifically regarding the stove/cabinet placement. The picture of the kitchen in the Enercon report does not establish that the Defendants had notice that the stove was installed incorrectly; even if it does show charring on the cabinet from the burners, those marks, without any comments in the report, could not have put Defendants on notice that the stove was installed out of compliance with its manufacturer's instructions. The picture of the exemplar kitchen, which was taken *after* the fire, also does not show that the Defendants knew **at**

**the time of leasing** that the kitchen design, because it did not adhere to the stove manufacturer's instructions, could pose a fire hazard. Finally, and similarly, the fact that another identically designed kitchen at the complex experienced a grease fire *after* the Gambrell fire does not show that the Defendants were on notice of the design defect at the time of leasing.

Thus, Defendants did not breach their duty to disclose latent defects of which they were aware at the time of leasing.

### D.     Counts I and II: Causation

The court **ADOPTS** this portion of the magistrate judge's recommendation in full and notes that the additional analysis of Count II's smoke detector claims above does not change the causation analysis.

## IV.     Report and Recommendation Section VI. Spoliation

Mrs. Gambrell argues that she is entitled to an adverse inference that the smoke detector was lost following the fire because it constituted favorable evidence to her and/or unfavorable evidence to Defendants. In diversity actions, "federal law governs the imposition of spoliation sanctions." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

"In the Eleventh Circuit, 'an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith.'" *Mann v. Taser Internat'l, Inc.*, 588 F.3d 1291 (11th Cir. 2009) (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931

(11th Cir. 1997) (per curiam)). "While this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference." *Id.* (quoting *Bashir*, 119 F.3d at 931). In *Bashir*, the court held that an adverse inference was unwarranted where the loss of the relevant evidence was "wholly unexplained" and the remainder of the evidence was "exceedingly strong" in favor of the spoliating party, but declined to "decide whether a wholly unexplained loss of evidence might in other circumstances warrant an inference of bad faith and thus an adverse inference." 119 F.3d at 932. "[B]ad faith can be found based on direct or circumstantial evidence . . . ." *Bell Aerospace Servs., Inc.*, 2010 WL 11425322, at *2 (M.D. Ala. Feb. 18, 2010) (internal citations omitted) (reviewing Eleventh Circuit case law).

The parties do not dispute that spoliation of the smoke detector occurred. Rather, the only question before the court is whether the evidence supports a finding of bad faith on Defendants' part. The court finds that here, where the loss of the smoke detector is "wholly unexplained" and the remainder of the evidence presents genuine issues of material fact regarding what kind of smoke detector Defendants installed and whether installation was the proximate cause of Mr. Gambrell's death, the question of whether Defendants spoliated in bad faith should be submitted to a jury.

## VI.  Conclusion

The court **ADOPTS IN PART** the magistrate judge's report and recommendation as to Counts I and II **to the extent they plead claims related to the smoke detector**. That portion of the report is subject to the above-noted additions and clarifications. The court **ADOPTS** the magistrate judge's recommendation as to spoliation, but not his portion of the report discussing

spoliation. The court **ADOPTS** the remainder of the magistrate judge's report and recommendation. Except for the parties' objections that the magistrate judge failed to address Plaintiff's Count II claim regarding the smoke detector, the court **OVERRULES** the parties' objections. The court **SUSTAINS** the Count II smoke detector objections to the extent Mrs. Gambrell alleged in Count II that Defendants failed to disclose a latently defective smoke detector; however, this ruling does not affect the court's decision to adopt the magistrate judge's ultimate recommendation that the court grant Defendants summary judgment as to Count II. The court **GRANTS** Plaintiff's Motion to Strike those portions of Defendants' objections that present new evidence and arguments not submitted to the court during summary judgment briefing.

Accordingly, the court **DISMISSES** Wilkinson Companies as a defendant and **GRANTS** summary judgment to and **DISMISSES WITH PREJUDICE** Wilkinson Group. The court **DENIES** Defendants' Motion for Summary Judgment as to Count I's claim that Defendants negligently or wantonly installed the smoke detector in Plaintiff's apartment in February 2012, **GRANTS** Defendants' Motion for Summary Judgment as to Count I's claim that Defendants negligently or wantonly maintained or ensured the functionality of the smoke detector in Plaintiff's apartment, and **GRANTS** Defendants' Motion for Summary Judgment as to Count II. The court **DISMISSES WITH PREJUDICE** the smoke detector maintenance claim in Count I and all of Count II. The court **DENIES** the Motion for Summary Judgment as to Counts VI and the defense of contributory negligence and **DECLINES** to find as a matter of law that spoliation of the smoke detector did or did not result from Defendants' bad faith. Having found this Motion and its objections adequately briefed, the court **DENIES** Plaintiff's Motion for Oral Argument. The court will enter a separate order consistent with this opinion.

**DONE** this 31st day of March, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE